## COMMONWEALTH vs. KURT MILES.

Hampden. December 5, 1994. - April 13, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Evidence*, Cross-examination, Consciousness of guilt, Identification, Photograph, Voice identification. *Constitutional Law*, Confrontation of witnesses, Identification, Assistance of counsel, Search and seizure. *Practice, Criminal*, Confrontation of witnesses, Assistance of counsel, Continuance. *Error, Harmless. Identification. Search and Seizure*, Body examination.

At a criminal trial, the judge erred in allowing the Commonwealth's motion to limit the scope of the defendant's cross-examination with respect to police investigation of a certain other person suspected of committing the crime alleged; the error, however, was harmless beyond a reasonable doubt, in light of the overwhelming evidence of the defendant's guilt. [70-75]

At a criminal trial, evidence of the defendant's threats of intimidation of a witness for the prosecution was relevant to consciousness of guilt; error in allowing evidence of such conduct of the defendant toward the same person before he knew she was to be a witness was not prejudicial where it was merely cumulative of her properly admitted testimony and in light of the strength of the Commonwealth's case. [75-76]

The judge at a criminal trial was warranted in denying the defendant's motion to suppress a photographic identification of him, where the array of nine photographs did not distinguish the defendant on the basis of his age nor was it in any other way improperly suggestive or conducive to misidentification. [76-78]

A criminal defendant failed to demonstrate that his defense counsel's alleged failure to object to a voice identification procedure, conducted under court order, deprived him of an otherwise available substantial ground of defense so as to amount to ineffective assistance of counsel. [78-79]

At a criminal trial the judge correctly denied the defendant's motion to suppress a voice identification of him, where the procedure, which followed many of the guidelines set out in *Commonwealth v. Marini*, 375 Mass. 510 (1978), was not unnecessarily suggestive. [79-81]

A criminal defendant did not demonstrate that his counsel's failure to object, until trial, to a preindictment court-ordered body examination of

the defendant amounted to ineffective assistance of counsel, where the search was nonintrusive and was conducted pursuant to court order by a physician in a hospital; where the skin condition for which he was examined (poison ivy rash) was temporary, thus exigent circumstances warranted conducting the examination without a prior hearing; and where, in any event, the defendant waived his right to any preexamination hearing. [81-84]

At the retrial after mistrial of a criminal case, the judge did not abuse his discretion in denying the defendant's motion for a continuance where the defendant did not demonstrate that defense counsel did not have a reasonable opportunity to prepare a defense. [84-86]

INDICTMENTS found and returned in the Superior Court Department on June 14, 1991.

The cases were tried before *William W. Simons*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mary F. Costello* for the defendant.

*Judy Zeprun Kalman*, Assistant District Attorney, for the Commonwealth.

LIACOS, C. J. After a mistrial, the defendant was retried and convicted by a second jury on three indictments charging rape and one indictment charging indecent assault and battery.

On appeal, the defendant raises five issues. First, he argues that the trial judge abused his discretion in allowing the Commonwealth's motion to limit the scope of cross-examination of a police witness. Second, the defendant asserts that the judge erred in denying his motion to exclude the testimony of his former girl friend about two incidents of harassment after the assaults. Third, the defendant contends that the judge erred in denying his motion to suppress the photographic identification. Fourth, the defendant argues that trial counsel's failure to object to a voice identification procedure and to the absence of a hearing prior to the court-ordered physical examination of his body constituted ineffective assistance of counsel. Finally, the defendant alleges that the judge erred in denying his motion for a continuance before

the commencement of the second trial. We affirm the defendant's convictions.

*Facts.* We recite some of the facts that the jury could have found from the evidence admitted, leaving other facts for our discussion of the specific issues raised on appeal.

On May 20, 1991, the victim was attacked as she jogged along the Ashley Reservoir in Holyoke. The assailant grabbed the victim from behind and strapped her arms to her chest so that she could not move. He threatened that he would kill her if she yelled. The assailant then dragged the victim through the brush into a wooded area near the reservoir. He forced her to undress. The assailant then forced the victim to submit to oral, vaginal, and anal intercourse. The victim could not see her assailant during the attack because he forced her to place her shirt over her face.

During and following the attack, in order to "make him see me as a human being [and] get away with my life," the victim engaged the assailant in conversation. The assailant disclosed that (1) he had had a girl friend for seven years, but they had ended the relationship approximately one year before; (2) that he had once weighed between 250 and 270 pounds; (3) that he smoked marihuana; and (4) that he was between twenty and twenty-five years old. The victim told the police that according to her assailant their conversation lasted for ten minutes and that she was close enough to hear him distinctly.

After the attack, the assailant left the victim in the woods. She dressed, returned home, and later went to the hospital accompanied by her mother. Two days later, a rash had developed over her entire body. A dermatologist confirmed that the rash was caused by poison ivy. Based on the victim's complaint to the doctor that she had been sexually assaulted at the reservoir, the doctor came to a medical opinion that the assailant likely would have a similar poison ivy rash. The victim reported her condition to the police, who determined that there were dense poison ivy plants on the path into the area where the victim was raped and at the site of the rape. The police then advised the news media that the assailant

had a red mountain bicycle and possibly had poison ivy. As a result, the police received a telephone call from a man who provided them with the defendant's name.

I. *Limitation of Cross-Examination.*

During the defendant's first trial, the trial judge allowed defense counsel to question the police about their investigation of other suspects. Before the start of the second trial, the Commonwealth moved to limit the scope of cross-examination to preclude any questioning about other suspects. During voir dire on the motion, Sergeant Michael McMullan, the lead investigating officer in the case, testified that, at one time, the police did have other suspects. He stated that the police removed one individual from the list of suspects on learning that this individual had been incarcerated in a halfway house on the day of the attack. The officer admitted that he never determined whether the halfway house was a "locked-down" facility. McMullan testified that the police excluded another suspect who had been in a jail on that day. In addition, McMullan stated that the police eliminated a third suspect, who had been seen riding a red mountain bicycle at the reservoir on the day of the attack, because he was Hispanic and did not match the victim's description of the man she had seen at the reservoir prior to the rape.

The officer further testified that the police ruled out a fourth suspect identified by an anonymous caller. This suspect had poison ivy on his arms and legs. In addition, the suspect had a questionable alibi. He told police that he had been fishing with a friend at the Quabbin Reservoir on the day in question. When the police interviewed the friend on the same day, he told them that the suspect had telephoned him and told him to tell police that they had been fishing together on the day of the rape. The friend told the police that he could not remember whether this was in fact true. The police returned to the suspect's home, and asked why he had made the telephone call. The suspect said that his friend was forgetful. When the police asked to see the suspect's bicycle, he showed them a rusty ten-speed bicycle with an attached baby carrier.

The defendant pointed out to the court that the police never obtained a warrant to search this suspect's home or body for poison ivy, nor did they determine adequately whether he owned a red mountain bicycle. Over the defendant's objection, the judge allowed the Commonwealth's motion to limit the scope of cross-examination.

The defendant argues that the judge abused his discretion in allowing the Commonwealth's motion. He alleges that, by precluding cross-examination about police investigation of other suspects, the judge denied him the right to confront witnesses against him in violation of art. 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution. Although we agree that the judge did err in allowing the Commonwealth's motion to limit the scope of cross-examination as to one suspect, we conclude that the error was harmless beyond a reasonable doubt.

Both the Sixth Amendment and art. 12 guarantee a criminal defendant's right to confront the witnesses against him through cross-examination. See *Kentucky* v. *Stincer*, 482 U.S. 730, 736-737 (1987); *Commonwealth* v. *Fordham*, 417 Mass. 10, 18 (1994); *Commonwealth* v. *Tanso*, 411 Mass. 640, 650, cert. denied, 505 U.S. 1221 (1992). The right to confrontation guarantees that, in most circumstances, a criminal defendant as a matter of right may cross-examine the prosecution's witnesses. See *Douglas* v. *Alabama*, 380 U.S. 415, 418 (1965); *Commonwealth* v. *Fuller*, 399 Mass. 678, 684 (1987). Indeed, the right to confrontation and cross-examination "is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Commonwealth* v. *Tanso, supra,* quoting *Pointer* v. *Texas*, 380 U.S. 400, 405 (1965).

However, a criminal defendant's confrontation right is not absolute. *Commonwealth* v. *Barnes*, 399 Mass. 385, 393 (1987). Although the defendant is entitled to a reasonable cross-examination of witnesses against him, the scope of cross-examination rests largely in the sound discretion of the trial judge. *Commonwealth* v. *Daye*, 411 Mass. 719, 735

(1992). *Commonwealth* v. *Weichel,* 403 Mass. 103, 105 (1988). We shall not overrule a trial judge's determination as to the proper scope of cross-examination unless the defendant demonstrates that the judge abused his discretion and that the defendant was prejudiced thereby. *Commonwealth* v. *Gagnon,* 408 Mass. 185, 192 (1990). *Commonwealth* v. *Fuller, supra* at 685.

In determining whether a defendant's constitutional right to cross-examine and thus to confront a witness against him has been denied because of an unreasonable limitation of cross-examination, we weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination. *Commonwealth* v. *Kirouac,* 405 Mass. 557, 561 (1989). In this case, Sergeant McMullan's testimony about the police investigation that led to the defendant's arrest was critical to the Commonwealth's case, in particular because the victim did not see her assailant's face at the time of the rape. Such testimony was highly material to one of the most important issues at trial, the identification of the defendant as the perpetrator of the crimes. Although defense counsel did have an opportunity to cross-examine McMullan, the judge precluded him from asking any questions about other persons investigated by the police. This was a substantial restriction of cross-examination, because misidentification was the crux of the defense. The facts sought to be raised on cross-examination, namely that the police had investigated other suspects, particularly one suspect who had poison ivy and a questionable alibi, "went to the essence of the defense." *Commonwealth* v. *Funches,* 379 Mass. 283, 293 (1979). The defendant had a legitimate purpose in seeking to inquire about other suspects because such evidence would tend to show that someone other than he attacked the victim. See *Commonwealth* v. *Daye, supra* at 735 (defendants not entitled to the names or locations of other people investigated by police absent demonstration that such evidence "would tend to show that [someone] other than the defendant[ ]" had committed the crime or that "the police had bungled the

investigation or otherwise avoided pursuit of the truth").[1] We conclude, therefore, that the trial judge erred in precluding cross-examination of Sergeant McMullan about the suspect with poison ivy and the questionable alibi.[2]

Nevertheless, we conclude that the judge's error does not require a reversal of the defendant's convictions. "[T]he denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case." *Delaware* v. *Van Arsdall*, 475 U.S. 673, 682 (1986). *Commonwealth* v. *DiBenedetto*, 414 Mass. 37, 39-40 (1992). See *Arizona* v. *Fulminante*, 499 U.S. 279, 306-307 (1991) (harmless error analysis may be applied to most constitutional errors). The admission of testimony obtained in violation of a defendant's confrontation rights will not amount to reversible error "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Van Arsdall, supra* at 681. See *Chapman* v. *California*, 386 U.S. 18, 23 (1967).

In light of the overwhelming evidence of the defendant's guilt, we may confidently conclude that the improper limitation of the scope of cross-examination was harmless beyond a reasonable doubt. The medical evidence of the condition of the defendant's body with poison ivy on his left arm, lower abdomen, pubic region, right lower leg, left lower leg, right foot, and scrotum strongly corroborated the identifications of the defendant and his voice by the victim.[3] The Common-

---

[1]Indeed, we question whether any criminal defendant effectively could assert a misidentification defense if good faith inquiries on cross-examination about police investigation of other suspects are completely precluded, as they were in this case.

[2]There is no indication in the record before us as to why the judge granted the Commonwealth's motion to limit the scope of cross-examination. It appears from the Commonwealth's brief that the basis of the motion was that evidence of other suspects lacked sufficient probative value and would not support an inference that someone other than the defendant was the perpetrator.

[3]The victim developed poison ivy on her entire body — chest, stomach, genitals, back, buttocks, and backs of her legs.

wealth presented substantial evidence to the jury that identi-
fied the defendant as the perpetrator of the crimes, including
the victim's firm identification of the defendant's voice as
that of the assailant, the victim's firm photographic and un-
tainted in-court identification of the defendant as the man
she had seen at the reservoir immediately prior to the rape,[4]
and the victim's identification of the defendant's bicycle as
that ridden by the defendant when she saw him at the reser-
voir. Also, the defendant fit the victim's detailed and accu-
rate description of the man she had seen at the reservoir,
which was given to police shortly after the commission of the
crimes. Further, the evidence showed that the defendant de-
veloped poison ivy on his entire body, as described, and that
dense poison ivy grew at the site of the crime and on the path
leading to the site. Additionally, the defendant's former girl
friend corroborated much of the information told to the vic-
tim by the assailant at the scene of the crime immediately
following the consummation of the rape, including that the
defendant's seven-year relationship with his former girl
friend had ended one year before the rape, and that the de-
fendant had lost a significant amount of weight.

Furthermore, the defendant's statements to police during
the investigation contradicted statements he had made to
third persons. For example, the defendant told police that he
had contracted poison ivy at work and that he had not used
his mountain bicycle on Monday, May 20, 1991, the day of
the rape. However, he told his work supervisor that he had
contracted poison ivy while "riding his mountain bicycle on
Monday," May 20. Similarly, the defendant told police that
he had met a friend at the reservoir on either the previous
Thursday or Friday. The friend told police that this was not
true. In light of this overwhelming evidence of the defend-
ant's guilt, we conclude that the judge's error in precluding
cross-examination about other suspects "was without effect
on the jury and did not contribute to the verdict." *Common-
wealth* v. *Sinnott*, 399 Mass. 863, 872 (1987), quoting *Com-*

---

[4] See discussion of this identification, *infra.*

*monwealth* v. *Marini*, 375 Mass. 510, 521 (1978). We hold that the error was harmless beyond a reasonable doubt.[5]

II. *Testimony of Defendant's Former Girl Friend.*

At the defendant's second trial, he made a motion to exclude the testimony of his former girl friend, Maureen Mahoney, about two incidents of harassment that occurred after the rape. The judge denied the motion and admitted the testimony as evidence of consciousness of guilt. Mahoney then testified that the defendant had harassed her in May, 1991, a few days after the rape, and again in August, 1991. The defendant argues that the judge erred in denying his motion to exclude Mahoney's testimony about the harassment because such testimony constituted inadmissible evidence of prior bad acts. We disagree.

The mere fact that Mahoney testified about certain prior bad acts does not preclude her testimony from being admitted as otherwise relevant to show the defendant's consciousness of guilt. Evidence regarding threats of intimidation of key witnesses for the prosecution is admissible to demonstrate consciousness of guilt. *Commonwealth* v. *Scanlon*, 412 Mass. 664, 676 (1992). *Commonwealth* v. *Porter*, 384 Mass. 647, 653 (1981). The Commonwealth informed the defendant of its intention to call Mahoney as a witness against him by August, 1991.[6] The August incident therefore occurred after the defendant knew that Mahoney would be a witness for the Commonwealth.[7] The judge properly admitted her

---

[5]We note also that it appears reasonable for the judge to conclude that three of the four alleged suspects were not likely assailants for the reason that two had been incarcerated on the day in question and the third (an Hispanic) in no way matched any description of the assailant. Thus, the error of the judge in precluding cross-examination was only as to the fourth suspect who had some signs of a poison ivy rash when interviewed by the police.

[6]During the hearing on this motion, the prosecutor stated that "by August [the defendant] would have known [Mahoney] was a witness, because the police statements were provided to counsel in June." Defense counsel did not contradict this statement. Hence, we accept it as true.

[7]In addition, the judge at the defendant's June 14, 1991, bail hearing had ordered the defendant to stay away from witnesses in the case.

testimony about the August incident to demonstrate the defendant's consciousness of guilt. However, it is arguable the judge should have excluded Mahoney's testimony about the May incident, since at that time there was no showing that the defendant knew that Mahoney would be a witness in the case. Nevertheless, assuming this to be error, it was not substantially prejudicial. *Commonwealth* v. *Woods*, 419 Mass. 366, 375 (1995). *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). In light of the strength of the Commonwealth's case, and the fact that Mahoney's testimony about the May incident was merely cumulative of her properly admitted testimony about the August incident, we conclude that the error was not prejudicial.

III. *Photographic Identification.*

Just before the attack, the victim observed a man on three different occasions. As she jogged along the canal, she first saw the man in the distance, sunning himself. She viewed him from two to four minutes as she jogged toward him, and passed within three or four feet of him. She passed the man again when she ran back along the other side of the canal. They passed within one foot of each other. He was riding a red mountain bicycle. During this encounter, the victim observed him close up for at least another ten seconds. The victim saw the man a third time when she observed him riding his bicycle over the dike she had just run across. She took note of him because he rode very quickly, despite the warm weather.

When she gave her statement to the police, the victim included a detailed description of the man she had seen at the reservoir. She told the police that she had seen a white male, approximately five feet, nine inches tall, 180 pounds, between twenty-two and thirty-four years old, with a mustache, short wavy brown hair, brown eyes, and that he had been riding a new red mountain bicycle.

On May 21, 1991, the victim looked through a photographic array containing approximately 1,000 black and white photographs. She did not select the defendant's photo-

graph.[8] Several days later, the police presented the victim with an array of nine color photographs. She picked the defendant's photograph as that of the man she had seen at the reservoir. Prior to the first trial, the defendant made a motion to suppress the photographic identification on the ground that the array was impermissibly suggestive. After a hearing, the first trial judge denied the motion, finding that the array was "reasonable and proper," and that it represented a "fair cross section" of "generally similar people."

The defendant asserts that the judge erred in denying his motion to suppress the photographic identification because the photographic array was impermissibly suggestive so as to give rise to a substantial risk of irreparable misidentification. Specifically, the defendant contends that the photographic array was suggestive because his photograph depicted someone significantly younger than the other men pictured. The defendant also argues that the victim's in-court identification of the defendant did not have a sufficiently independent basis and thus was impermissible.

In order to suppress a photographic identification, the defendant must show by a preponderance of the evidence that, in light of the totality of the circumstances, the procedures employed were so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law. *Commonwealth* v. *Wallace*, 417 Mass. 126, 129 (1994). *Commonwealth* v. *Holland*, 410 Mass. 248, 253 (1991). *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 541 (1990). We have viewed the nine photographs included in the array, and conclude that the array did not distinguish the defendant on the basis of his age, nor was the array in any other way unnecessarily suggestive or conducive to misiden-

---

[8]The photograph had been taken three years earlier. At the time, the defendant had longer hair and weighed significantly more than he did at the time of the attack.

tification. The judge was warranted in denying the defendant's motion to suppress the photographic identification.[9]

IV. *Ineffective Assistance of Counsel.*

a. *Voice Identification.*

On June 10, 1991, pursuant to a court order obtained after a hearing at which defense counsel was present, the police conducted a voice identification procedure.[10] The victim heard five individuals read the same passages from a fifth-grade reader. The victim sat in one room, while the readers sat in a separate, adjoining room. The victim could not see the readers, nor could they see her. Defense counsel attended the voice identification and, although consulted by the police about the proposed procedure, did not object to it. The victim twice identified the defendant's voice as that of her assailant. Prior to the first trial, the defendant made a motion to suppress the voice identification because it was the product of an impermissibly suggestive procedure. After a hearing, the judge denied the motion, finding that the voice identification test was not impermissibly suggestive and that it met the standards set out by this court in *Commonwealth* v. *Marini*, 375 Mass. 510, 517 (1978).[11]

The defendant argues that the failure of counsel to object to the voice identification procedure deprived him of effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and art. 12. He also contends that the judge erred in denying his motion to suppress the results of the voice identification procedure because the procedure was impermissibly suggestive. Specifi-

[9]Because we conclude that the array was proper, we need not address the defendant's argument that the victim's in-court identification did not have an independent basis and thus was impermissible.

[10]The voice identification procedure occurred before the defendant's arrest, as a result of a grand jury request. At the voir dire hearing on the motion to suppress the voice identification, Captain Richard Page of the Holyoke police department testified that he had consulted the office of the district attorney about how to conduct the voice identification procedure in accord with constitutional mandates.

[11]The judge also noted that defense counsel "was present [at the procedure] and made no complaint."

cally, he argues that the procedure impermissibly directed attention to him because he was younger than the other readers and because the other readers were law enforcement officers.

The defendant's ineffective assistance of counsel claim lacks merit. In testing whether counsel was ineffective, we consider "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).[12] The defendant has failed to show that defense counsel's failure to object to the voice identification procedure likely deprived him of an otherwise available, substantial ground of defense. See *id*. Although defense counsel was present at the voice identification and failed to object to the procedure, that failure to object did not amount to ineffective assistance of counsel. The record indicates that defense counsel argued against the voice identification in a hearing held prior to the procedure.[13] In addition, defense counsel filed a pretrial motion to suppress on the ground that the procedure used was impermissibly suggestive. The judge denied this motion after a hearing. In the circumstances, defense counsel exhausted those avenues of relief open to the defendant. The defendant has failed to show that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). Hence, we decline to conclude that defense counsel's conduct amounted to ineffective assistance of counsel.

We also conclude that the judge appropriately denied the defendant's motion to suppress the voice identification because the procedure used was not impermissibly suggestive.

---

[12]"The standard that this court has used for testing the ineffectiveness of counsel, in a constitutional sense, is at least as favorable to a defendant as is the Federal standard . . . ." *Commonwealth* v. *Curtis*, 417 Mass. 619, 625 n.4 (1994), citing *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985). See *Commonwealth* v. *Howell*, 394 Mass. 654, 657 (1985).

[13]In light of this hearing, we question the defendant's assertion that defense counsel failed to object to the procedure.

This court noted that the "[i]dentification by voice alone has long been thought to involve 'grave dangers of prejudice to the suspect.'" *Commonwealth* v. *Marini,* 375 Mass. 510, 516 (1978), quoting *Palmer* v. *Peyton,* 359 F.2d 199, 201 (4th Cir. 1966). Hence, we cautioned that, "[a]t all events, police and prosecutors [should] take particular pains to avoid suggestive conditions in making arrangements for *out-of-court* tests where a witness tries to match live voices with [her] recollections of a voice heard in the usually stressful original setting" (emphasis in original). *Commonwealth* v. *Marini, supra* at 517. We then suggested certain procedures which police and prosecutors should follow when conducting voice identifications. For example, we advised against one-on-one confrontations between witness and suspect. We suggested that precautions should be taken to avoid directing undue attention to any participant, and that the witness should not view the participants. We further noted that the words chosen for repetition should not be those heard by the witness at the crime scene. Finally, we advised that voice identification procedures should be conducted soon after the crime in order to avoid any decrease of reliability that might result from delay. *Id.*

The defendant concedes that "many of the guideline[s] set out in *Marini* were followed at the voice exemplar," but argues that nevertheless the procedure was impermissibly suggestive because it directed undue attention to the defendant's voice. We disagree. After consulting with the office of the district attorney, the police used a voice identification procedure that adequately protected the defendant's rights. There was no one-on-one confrontation between the victim and the defendant. The victim could not see the participants during the procedure, nor could they see her. The defendant selected the order in which he would read. The participants read the same innocuous passage from a fifth-grade reader. Defense counsel attended the procedure and, although consulted, never objected to it. In addition, we have viewed a videotape of the voice identification procedure, and conclude that the procedure was not impermissibly suggestive. The defendant's

voice did not stand out because of his age, nor did any other aspect of the procedure direct undue attention to the defendant's voice.[14] Hence, we conclude that the judge properly denied the defendant's motion to suppress the voice identification.[15]

b. *Body Examination.*

On May 29, 1991, the Commonwealth obtained an ex parte court order compelling the defendant to submit to a physical examination by nonintrusive methods for the presence of poison ivy on his body. At the ex parte hearing, the Commonwealth submitted an affidavit that averred that: (1) the defendant became a suspect when the victim identified him as the person she had seen immediately before the assault; (2) statements made to the police by the defendant compared favorably to certain information that the assailant told to the victim during and after the rape; (3) the victim developed poison ivy shortly after the attack; (4) the scene of the rape was covered with poison ivy; (5) the defendant had a rash that appeared to be poison ivy; and (6) the defendant had told police that he had been in Springfield at the time of the rape, but his personal vehicle was seen parked at his home at that time. After the court issued the ex parte order, the defendant did not request a hearing on the matter. Instead, he voluntarily submitted to a physical examination by a physician of his entire body, including his genitals. The defendant's attorney, his father, and a police officer were present at the examination.

Prior to the first trial, the defendant filed a motion to suppress the results of the body examination on the ground that he should have been afforded a hearing before the examination in order to determine whether there existed probable cause to justify the examination. The defendant's motion to

---

[14]The defendant also asserts that his voice stood out as more nervous and distinct than the voices of the other participants, all four of whom were law enforcement officers. We disagree.

[15]We also note that the victim's identification of the defendant was not "by voice alone." Cf. *Commonwealth* v. *Marini*, 375 Mass. 510, 516 (1978).

suppress was denied. The issue is presented to us in this appeal solely on the claim that his counsel's failure to object to the court-ordered body examination amounted to ineffective assistance of counsel because the procedure was an illegal search and seizure authorized without probable cause or a hearing, and that the examination therefore violated his rights under the Fourth and Fifth Amendments to the United States Constitution and art. 14 of the Declaration of Rights.[16]

We recently addressed a similar issue in *Matter of Lavigne*, 418 Mass. 831 (1994).[17] Assuming, without deciding, the principles stated there to be applicable to this claim of ineffective assistance, we offer the following comments. In *Matter of Lavigne*, we held that "the compelled extraction of a person's blood for the purpose of testing its immutable characteristics . . . without first affording him notice and an opportunity to be heard violates his rights." *Id.* at 832. We also required that the Commonwealth establish probable cause to believe that Lavigne had committed a murder and that the identity of the blood found at the murder scene would aid the Commonwealth's investigation. *Id.* at 835-836. Although *Matter of Lavigne*, like the instant case, involved a preindictment order compelling the suspect to provide physi-

---

[16]We note at the outset that the defendant's Fifth Amendment claim is without merit. The Fifth Amendment privilege against self-incrimination applies only to "testimonial" or "communicative" evidence that reveals an individual's subjective knowledge or thought processes. See *Schmerber* v. *California*, 384 U.S. 757, 761 (1966). The results of the body examination, in contrast, constituted physical evidence which is not protected by the Fifth Amendment. See *Gilbert* v. *California*, 388 U.S. 263, 266-267 (1967) ("mere handwriting exemplar . . . like the voice or body itself, is an identifying physical characteristic outside [the Fifth Amendment's] protection"); *United States* v. *Wade*, 388 U.S. 218, 222 (1967) ("compelling the accused merely to exhibit his person for observation . . . involves no compulsion of the accused to give evidence having testimonial significance"); *Schmerber*, *supra* at 764 ("that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate [Fifth Amendment privilege against self-incrimination]").

[17]*Matter of Lavigne*, 418 Mass. 831 (1994), was decided after the second trial.

cal evidence, we believe that this case is distinguishable from the *Lavigne* case.

First, the ex parte order in this case compelled the defendant to go to the hospital to be examined for poison ivy, not to have blood drawn from his body. The search at issue in this case, therefore, was considerably less intrusive than that in *Lavigne*. Indeed, the examination of the defendant's skin for poison ivy is akin to a test for occult blood on a defendant's skin. See *Commonwealth* v. *Beldotti*, 409 Mass. 553, 559 (1991). As with a test for occult blood, the intrusion in this case was "minimal, simply a test of the defendant's [skin] for objective evidence of [poison ivy]." *Id.* Furthermore, the nonintrusive examination occurred pursuant to a court order, and was conducted by a physician in a hospital emergency room.

Second, the defendant was ordered to submit to a physical examination for the presence of poison ivy, a condition which was temporary. Therefore, time was of the essence in order to preserve the evidence. In contrast, the compelled blood testing in *Lavigne* was for the purposes of testing its "immutable" characteristics. Because these characteristics were neither fleeting nor changeable, there were no exigent circumstances that required immediate action to preserve the evidence. Hence, there was sufficient time to afford the defendant notice and an opportunity to be heard before the blood extraction procedure. We believe that the exigent circumstances in this case warranted examining the defendant's body for poison ivy without a prior hearing.

Even if we did decide that the defendant's due process rights entitled him to a hearing prior to the body examination, we conclude that the defendant waived his right to such a hearing. He voluntarily went to the hospital for the examination.[18] His father and his attorney were present during the examination, and neither they nor the defendant objected to

[18]The defendant makes no argument that his consent was involuntary. Hence, we need not address whether his consent was "unfettered by coercion, express or implied." *Commonwealth* v. *Robinson*, 399 Mass. 209, 217 (1987), quoting *Commonwealth* v. *Harmond*, 376 Mass. 557, 561

the procedure at that time. Indeed, the defendant did not object to the body examination until more than eight months had passed, when he filed a motion to suppress before his first trial. In contrast, Lavigne filed a motion to have the blood sample returned to him immediately after the blood extraction. *Matter of Lavigne, supra* at 833.

The defendant's ineffective assistance of counsel claim must fail. As we noted above, in order to prevail on this claim, a defendant must show that his counsel's conduct "[fell] measurably below that which might be expected from an ordinary fallible lawyer," and likely deprived him of an otherwise available, substantial ground of defense. *Commonwealth* v. *Saferian, supra* at 96. In this case, defense counsel filed a motion to suppress the results of the body examination and thus focused the judge's attention on this issue. The judge denied the motion. Counsel's failure to object at the time of the body examination did not prejudice the defendant in any way. In addition, because we conclude that no hearing was required before the body examination and that the examination did not violate the defendant's Federal or State constitutional rights, the defendant has failed to show that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield, supra* at 115.

V. *Denial of Motion for Continuance.*

Prior to the commencement of the defendant's second trial, newly appointed defense counsel moved for a continuance so that he could obtain a transcript of the first trial and accompanying pretrial hearings. Defense counsel also stated that he needed additional time to investigate the testimony of an expert who would testify for the Commonwealth, and to retain his own expert to contradict the Commonwealth's expert. The judge denied the motion. On appeal, the defendant argues that the judge's denial of his motion for a continuance deprived him of his Sixth Amendment right to counsel and

(1978). See *Commonwealth* v. *Walker*, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976).

his due process rights under the Fifth and Fourteenth Amendments and art. 12.

The decision whether to grant a motion to continue lies within the sound discretion of the trial judge. *Commonwealth* v. *Haley*, 413 Mass. 770, 775 (1992). *Commonwealth* v. *Habarek*, 402 Mass. 105, 108 (1988). A denial of a continuance will not constitute error absent an abuse of that discretion. *Commonwealth* v. *Mamay*, 407 Mass. 412, 419 (1990). *Commonwealth* v. *Bryer*, 398 Mass. 9, 15 (1986). However, a trial judge may not exercise his discretion in such a way as to impair a defendant's "constitutional right to have counsel who has had reasonable opportunity to prepare a defense." *Commonwealth* v. *Souza*, 397 Mass. 236, 240 (1986), quoting *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 51 (1976). In determining whether a trial judge's denial of a continuance has violated a defendant's right to effective assistance of counsel and to due process of law, we must examine the "circumstances present in [the] case, 'particularly [those] reasons presented to the trial judge.' " *Commonwealth* v. *Cavanaugh*, *supra*, quoting *Ungar* v. *Sarafite*, 376 U.S. 579, 589 (1967).

In this case, the defendant has failed to show that the trial judge abused his discretion in denying the motion for a continuance, and that this denial substantially impaired defense counsel's ability to prepare and to present a full and fair defense at the second trial. First, the defendant's asserted reasons for needing a continuance, that he wished to obtain a transcript of the prior trial and to investigate a potential expert witness, did not demonstrate that a delay would measurably contribute to the resolution of the case. See *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 276-277 (1973). On appeal, the defendant argues that he required a transcript of the prior proceedings in order to determine whether "different or further" arguments existed that would warrant a rehearing of his suppression motions filed and denied before the first trial. However, the defendant did not raise this argument in his motion for a continuance, nor did he state that any "different or further" arguments existed when he refiled

the suppression motions at the second trial.[19] Although we have held that a motion judge may conduct another hearing on a pretrial motion that has been heard and denied, the judge has no obligation to conduct such a hearing "so long as no new issues are raised and the relevant law has not changed." *Commonwealth* v. *Parker*, 412 Mass. 353, 356 (1992). Because the defendant failed to raise new issues or to show any change in the relevant law, the judge properly denied the defendant's motion for a continuance.

Second, the defendant has not demonstrated that defense counsel at his second trial did not have a reasonable opportunity to prepare a defense. See *Commonwealth* v. *Souza*, *supra* at 240; *Commonwealth* v. *Cavanaugh*, *supra*. The defendant's second trial occurred nearly two months after the first trial and nearly a year after the crime. Even if defense counsel at the second trial did not have a transcript of the first trial and accompanying pretrial hearings, he did have two months in which to examine the memoranda filed in support of the defendant's pretrial motions, as well as to inquire of his predecessor counsel as to the disposition of those motions. His failure to do so is not sufficient reason to conclude that the judge abused his discretion in denying the defendant's motion for a continuance.

*Judgments affirmed.*

---

[19]We further note that on appeal the defendant has provided no indication what "different or further" arguments could have been made regarding the pretrial motions had he obtained the transcript.