Connolly, J.
On July 26 and 27, 2000, this matter was before this court for hearing on the motion of the defendant, Anthony Mangano, to suppress an out-of-court voice identification of the defendant made by Patricia O’Brien. In support of this motion the defendant argues that the voice identification was unnecessarily suggestive and conducive to mistaken identification so as to deny the defendant due process of law under the Fourteenth Amendment to the Constitution of the United States and Article 12 of the Declaration of Rights of the Massachusetts Constitution. The Commonwealth has opposed the defendant’s motion to suppress. For the reasons set forth below, the defendant’s motion to suppress is DENIED.
FINDINGS OF FACT
The defendant is charged with the murder of Robert Malloy (“Malloy” or “Bobby”) which is alleged to have occurred between December 7, 1992 and December 20, 1992. The victim’s body was found in Foxboro, MA on December 20, 1992.
Malloy and Patricia O’Brien (“O’Brien”), Malloy’s longtime partner, lived together in Brooklyn, New York for approximately twenty-five years. From approximately 1985 through 1992, the couple shared an apartment on 59th Street and Flatbush Avenue in Brooklyn, N.Y. During that time, if the phone rang in the apartment, O’Brien often answered the phone. Beginning in 1989 or 1990, a man who identified himself as “Anthony” began calling the Malloy/O’Brien residence. Each time Anthony called he would ask to speak to Malloy. O’Brien and Anthony never had long conversations, but she would refer to him as Anthony and he would refer to her as Pat. Some “two hundred” calls from Anthony continued over the course of two to three years. After answering the phone each time, O’Brien became familiar with Anthony’s “distinct” voice and was able to instantly recognize the caller. O’Brien also knew the caller was Anthony because Malloy would later tell her that he had just spoken with Anthony. Aside from the several phone calls, O’Brien never met or saw Anthony.
During the summer of 1992, Anthony called the Malloy/O’Brien residence approximately three times and each time O’Brien answered the phone. During the first call, in June or July 1992, Anthony demanded to know where Bobby was and told O’Brien that he wanted to kill Malloy when he got hold of him. Anthony stated that he would have to “do him in” before the end of the summer because he was going to jail. Anthony also alleged in his call that Malloy had stolen Anthony’s mother’s Mercedes Benz and $50,000 worth of marijuana from him. Anthony also threatened “to get” O’Brien. The other calls from Anthony to the Malloy/O’Brien residence that summer were of a similar nature to the June/July phone call.
O’Brien did not receive any further phone calls from Anthony until December 1992. On December 26, 1992, Sergeant Richard Nagle (“Sgt. Nagle”), telephoned O’Brien and informed her that Malloy was dead. On December 28, 1992, Anthony called O’Brien and asked her if she knew where Malloy was located and asked if Malloy was in jail. O’Brien recognized the caller as Anthony because it was the same voice as the calls she had received before. Again, Anthony threatened “to get” both Bobby and O’Brien. Anthony also asked for O’Brien’s telephone records and asked her about the warehouse his mother’s car was located. Anthony then told O’Brien that he was going to send over two private detectives to look through papers to find out where Malloy was located. After the call from Anthony, O’Brien called Sgt. Nagle and informed him of the threatening call.
In early January 1993, as part of his investigation of the Malloy murder, Sgt. Nagle contacted Special Agent Lois Delaney (“Agent Delaney”) of the Drug Enforcement Agency. Agent Delaney had worked on a drug investigation that had resulted in a prior arrest of the defendant. Sometime after January 6, 1993, Sgt. Nagle received an audio tape from Agent Delaney which contained a thirty minute conversation between the defendant and Agent Delaney.
On January 7, 1993, O’Brien was found unconscious in her apartment after an apparent suicide attempt. O’Brien testified that she attempted suicide because she was afraid of the defendant. On January 13, 1993, after Sgt. Nagle learned that O’Brien was hospitalized at Maimonides Hospital in Brooklyn, N.Y., he called O’Brien at the hospital and spoke with her about the attempted suicide and about Anthony. That same day, Sgt. Nagle traveled to Brooklyn with an assistant district attorney and a Foxboro police detective to meet with O’Brien. After arriving at the hospital, Sgt. Nagle and his associates met with O’Brien in a conference room.
While in the conference room, Sgt. Nagle and O’Brien had a brief conversation in which the topics *74 of the suicide attempt and Anthony were discussed. O’Brien told Sgt. Nagle that if she was going to die, she was going to do it herself, not Anthony. O’Brien testified that she was not medicated at the time of this meeting. According to Sgt. Nagle, O’Brien did appear to be nervous when discussing Anthony, but did not appear to be medicated and was responsive to questions and alert.
Sgt. Nagle then told O’Brien that he was going to play an audio tape for her and asked her to listen to the tape and tell him whether she recognized the voice on the tape. Sgt. Nagle also told O’Brien that she may not recognize the voice on the tape at all and that she should not feel pressured to identify the voice. Sgt. Nagle did not say anything about who was on the tape or the subject matter of the tape. Sgt. Nagle then played the tape he received from Agent Delaney and immediately upon hearing the defendant’s voice, O’Brien stated, “that’s definitely Anthony, his voice scares the shit out of me.” O’Brien also stated that she had heard the voice over a hundred times. At this point, O’Brien began to shake uncontrollably. The tape was played for approximately fifteen seconds and only the defendant’s voice was played for the witness. Although Sgt. Nagle could not remember what portion of the tape was played, no names, places, or other identifying remarks were revealed in the fifteen-second portion of tape. No other tapes were played for O’Brien.
RULINGS OF LAW
The defendant seeks to suppress the one-on-one voice identification contending that it was so unnecessarily suggestive and conducive to mistaken identification that it violated the defendant’s due process rights.
A defendant moving to suppress a voice identification has the burden of proving by a "preponderance of the evidence,” that the totality of the circumstances rendered the identification so unnecessarily suggestive and conducive to irreparable misidentification so as to be offensive to due process. Commonwealth v. DeMaria, 46 Mass.App.Ct. 114, 118, review denied 429 Mass. 1101 (1999); Commonwealth v. Miles, 420 Mass. 67, 77 (1995); Commonwealth v. Botelho, 369 Mass. 860, 866 (1976). If a defendant meets this burden, the resulting identification evidence must be excluded from his trial. Commonwealth v. Johnson, 420 Mass. 458, 465 (1995). Once a defendant sustains this burden, the prosecution cannot then introduce subsequent identifications unless it establishes by “clear and convincing evidence,” that the subsequent identifications had a source independent of the tainted confrontation. Id. at 463. If the pretrial identifications are not suggestive, however, the pretrial identifications are admissible without a further showing. Commonwealth v. Warren, 403 Mass. 137, 139 (1988).
Concern has been expressed in reported cases about the danger of unfair prejudice to the suspect that inheres in voice identification. DeMaria, 46 Mass.App.Ct. at 117; Miles, 420 Mass, at 80. In order to protect against dangers of unfair prejudice, the Supreme Judicial Court suggested in Commonwealth v. Marini, 375 Mass. 510, 517 (1978), several procedures to be followed when conducting voice identifications. The Court cautioned that (1) a witness who has a basis for making an identification by sight ought not be asked to make a voice identification unless the witness asks to hear the voice; (2) a one-on-one audition ought to be avoided, i.e., there should be an audition lineup; (3) the witness ought not to be viewing the suspects as she listens to them; (4) the words spoken by the suspects ought not be the same as those heard by the witness at the scene; and (5) the voice recognition test ought to be conducted close to the time of the crimeid.; DeMaria, 46 Mass.App.Ct. at 117. The Marini court acknowledged that there will be occasions where one or more of the precautions may be overlooked. Marini, 375 Mass, at 517; DeMaria, 46 Mass.App.Ct. at 117.
The evidence before this court, when viewed in the totality of circumstances, indicates that the voice identification procedure conducted Sgt. Nagle was not unnecessarily suggestive or conducive to mistaken identification. See DeMaria, 46 Mass.App.Ct. at 118. The Commonwealth concedes that Sgt. Nagle played only one male voice for the witness and did not take the precaution of conducting an audio lineup. However, while “a single taped voice raises the suspicion of a constitutional violation.that factor alone will not constitute sufficient ground for exclusion of the out-of-court identification.” Commonwealth v. Pacheco, 12 Mass.App.Ct. 109, 118(1981).
Accordingly, the other precautions suggested in Marini were followed in the present case. Following the guidelines of Marini, O’Brien did not view the defendant as she listened to him. Sgt. Nagle also made efforts to ensure that the portion of the tape played did not reveal identifying information and did not contain the same statements as those heard previously by the witness in her prior phone conversations with the defendant. Additionally, the identification procedure was conducted on January 13, 1993, close in time to December 28, 1992, the date on which O’Brien last spoke with defendant on the telephone. Furthermore, because O’Brien never had a visual observation of the defendant, the only means for the witness to make an identification of the defendant was by voice. See Marini, 375 Mass, at 517-18. Although O’Brien was hospitalized in relation to her suicide attempt and appeared nervous when talking about Anthony, the witness was responsive and alert. Furthermore, there is no evidence that Sgt. Nagle prompted the witness. Soon after the tape began to play, O’Brien made a definitive identification of the defendant. Only after O’Brien made the identification did she begin to shake uncontrollably. Therefore, after examining the totality of the circumstances, the voice identification procedure was not impermissibly suggestive.
*75 Other one-on-one voice identifications have been found not to be unnecessarily suggestive when other Marini precautions were followed. In Commonwealth v. O’Loughlin, 17 Mass.App.Ct. 972, 972 (1984), the police conducted both an in-person, one-on-one visual (show-up) and a voice identification with the victim. The Appeals Court found that the voice identification was not unnecessarily suggestive since the police engaged the defendant in normal conversation rather than requiring him to speak the words as heard by the witness at the crime scene. Id. See also Commonwealth v. Gauthier, 21 Mass.App.Ct. 585, 587-88 (1986) (one-on-one voice identification and show-up identification not suppressed even though defendant was asked to repeat the words uttered at the scene of the crime); Pacheco, 12 Mass.App.Ct. at 118 (one-on-one voice identification did not violate defendant’s constitutional rights since there was no prompting by police, identification made soon after tape played and no incriminating remarks on tape). Contrast Commonwealth v. Powell, 10 Mass.App.Ct. 57, 60-61 (1980), in which the Appeals Courtfound the voice identification to be unduly prejudicial because the defendant uttered the exact statements heard the night of the crime in a one-on-one voice identification, made after a visual identification.
Thus, this court concludes after an examination of the totality of the circumstances, that due process standards have been met and the motion to suppress is denied. “(A]ny infirmities in the challenged identification [are] properly left for the defense to raise at trial and for the jury to weigh in deliberations.” Pacheco, 12 Mass.App.Ct. at 120.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to suppress the pre-trial voice identification be DENIED.