COMMONWEALTH *vs.* LUIS E. MELENDEZ-DIAZ.

No. 05-P-1213.

Suffolk. October 8, 2009. - February 3, 2010.

Present: RAPOZA, C.J., DUFFLY, & CYPHER, JJ.

*Controlled Substances. Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses. *Evidence,* Expert opinion, Scientific test, Opinion, Authentication, Certificate of drug analysis. *Error, Harmless.*

At the trial of indictments charging trafficking in cocaine and distribution of cocaine, the erroneous admission in evidence of drug certificates of analysis, without testimony from an analyst, in violation of the defendant's constitutional right of confrontation, was not harmless beyond a reasonable doubt, where the certificates were of significant importance in the Commonwealth's case because they were the only evidence of the composition and weight of the substances in question, and the other evidence against the defendant was circumstantial and certainly not overwhelming; therefore, this court reversed the judgments against the defendant and set aside the verdicts. [232-235]

INDICTMENTS found and returned in the Superior Court Department on March 4, 2002.

The cases were tried before *Barbara J. Rouse,* J.

*Helle Sachse,* Assistant District Attorney, for the Commonwealth.

*Mary T. Rogers* for the defendant.

CYPHER, J. In July, 2007, this court, in an unpublished decision, affirmed the defendant's convictions by a Superior Court jury of trafficking in cocaine between fourteen and twenty-eight grams and distributing cocaine. The United States Supreme Court subsequently granted the defendant's petition for a writ of certiorari, and in *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009), reversed the judgment of this court and remanded for further consideration on the question whether the constitu-

tional error[1] in admitting the drug certificates of analysis in evidence at trial was harmless beyond a reasonable doubt. The Supreme Court noted, "We of course express no view as to whether the error was harmless. The Massachusetts Court of Appeals did not reach that question and we decline to address it in the first instance . . . . Today's opinion . . . in no way alters the type of evidence (including circumstantial evidence) sufficient to sustain a conviction." *Id.* at 2542 n.14. We reverse.

*Facts.* The fundamental facts are not in dispute. On November 15, 2001, Boston police were alerted to suspicious conduct of Thomas Wright, an employee of a K-Mart store (store) in the South Bay Mall in the Dorchester section of Boston, by the loss-prevention manager of that store. On that day, as had occurred on several occasions in the previous three months, Wright was observed as he walked outside and got into a blue, four-door Mercury Sable automobile through the rear passenger door; a meeting apparently had been arranged with the driver by telephone and cellular telephone. Police nearby observed the car travel slowly through the parking lot and saw Wright, sitting on the rear seat, lean toward and between the two men in the front seats. When Wright leaned back, the car stopped; he then left the car and started walking back to the store. He was stopped by an officer who searched him and found four clear plastic bags that appeared to contain cocaine. Other officers were signaled to stop and arrest the driver, Ellis Montero, and the passenger, the defendant Melendez-Diaz. Montero and the defendant were frisked for weapons but not searched.

The officers then drove to the front of the store and picked up Wright. Montero, Wright, and the defendant were handcuffed with their hands behind their backs and placed in the rear seat of a police cruiser to be taken to the police station. On the way, the defendant and Montero, who were sitting next to each other, were talking to each other in Spanish, fidgeting, making furtive movements, leaning to make space between them, and kicking the back of the cruiser's front seat. Wright was seated on the

---

[1] "Absent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial." *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. at 2532, quoting from *Crawford* v. *Washington*, 541 U.S. 36, 54 (2004).

end of the rear seat next to the door on the passenger side and was not observed moving around.

At the police station during booking, two cellular telephones and $301 were taken from Montero, and $157 and a pager were taken from the defendant. One of the officers returned to the cruiser and found a fold of bills totaling $320 on the ground near the door used by Montero and the defendant when they were taken from the cruiser. A plastic bag containing nineteen smaller bags of what appeared to be cocaine was also found hidden in a partition between the front and rear seats of the cruiser, on the side where Montero and the defendant had been seated.[2]

*Background of this remand.* On the defendant's direct appeal, this court issued an unpublished memorandum and order pursuant to Appeals Court rule 1:28, in which we concluded (1) the trial judge did not err in denying the defendant's motion for required findings of not guilty on the indictments charging distributing and trafficking in cocaine; (2) trial counsel was not ineffective for not filing a motion to suppress; and (3) trial counsel was not ineffective for failing to point out the visual dissimilarities between the packages of cocaine obtained from Wright and those found in the police cruiser. *Commonwealth* v. *Melendez-Diaz*, 69 Mass. App. Ct. 1114 (2007).

In a separate argument in his appellate brief, the defendant claimed a violation of *Crawford* v. *Washington*, 541 U.S. 36 (2004), asserting that *Commonwealth* v. *Verde*, 444 Mass. 279 (2005), is contrary to *Crawford*, and that the three drug analysis certificates were erroneously admitted in evidence without first satisfying the requirements of *Commonwealth* v. *Lanigan*, 419 Mass. 15, 25-26 (1994) (outlining a judge's "gatekeeper role" in assessing the scientific validity and reliability of expert opinion). There were objections at trial, based on *Crawford*, to the three certificates introduced in evidence by the Commonwealth. The defendant's argument was dismissed in a footnote to our decision, relying on the *Verde* decision.

In accordance with the directive from the Supreme Court, we proceed to consider the effect of the preserved error in the admission in evidence of the drug analysis certificates.

---

[2]Montero and the defendant were tried together under a joint venture theory.

*Discussion.* The Supreme Court ruled in *Melendez-Diaz* v. *Massachusetts* that "[t]he Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error." *Id.* at 2542. The standard for our review of constitutional error has been described by a number of formulations, including the following:

> "Because the defendant's constitutional right to cross-examine was abridged, we must review the violation for prejudicial error. In *Commonwealth* v. *Miles*, [420 Mass. 67, 73 (1995)], we concluded that '[t]he admission of testimony obtained in violation of a defendant's confrontation rights will not amount to reversible error "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." ' *Id.* at 73, quoting *Delaware* v. *Van Arsdall*, [475 U.S. 673, 681 (1986)]." *Commonwealth* v. *Vardinski*, 438 Mass. 444, 452 (2003).

> "We prefer the approach of this Court in deciding what was harmless error in our recent case of *Fahy* v. *Connecticut*, 375 U.S. 85, [86-87 (1963)] . . . . 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Chapman* v. *California*, 386 U.S. 18, 23 (1967). "An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, under *Fahy*, be conceived of as harmless." *Id.* at 23-24.

> "To make that determination, we examine a number of factors, including the importance of the evidence in the prosecution's case, the frequency of reference to the evidence, whether it was cumulative of other evidence and whether the other evidence against the defendant was overwhelming." *Commonwealth* v. *Rosario*, 430 Mass. 505, 511 (1999).

> We also consider "the relationship between the evidence and the premise of the defense." *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983).

The defendant argues that we "need go no further than to examine that the evidence that should not have been admitted

was the total evidence of an element of the crime." After a careful search of the record, we agree with the defendant that the only material evidence that the substances were cocaine, and that they weighed specific amounts, was contained in the drug analysis certificates.

"Proof that a substance is a particular drug need not be made by chemical analysis and may be made by circumstantial evidence." *Commonwealth* v. *Dawson,* 399 Mass. 465, 467 (1987). "The trial judge will first have to make a finding that any police or drug-user witness's experience with a drug would or would not permit him to give an opinion as to what drug a particular substance was." *Ibid.*

Two police officers testified that the substances in the seized plastic bags "appeared" to be, or "looked like," cocaine, and that the method of packaging and estimated street value was supported by their experience in numerous other cases that cocaine had been distributed in a similar manner by automobile. One of the officers acknowledged on cross-examination that he had no "real knowledge" of what the substances were, except for what was in the drug certificates. The word "cocaine" frequently was used by the police, but at no time did the officers cite any objective evidence, criteria, or field tests; they did not articulate how their expertise permitted them to identify the substances as cocaine. The defendant, Montero, and Wright did not testify, and there is no evidence that at any time they specifically identified, admitted, or referred to any of the substances as cocaine.

The major part of the officers' testimony constituted circumstantial evidence of drug distribution.[3] Compare *Commonwealth* v. *Little,* 453 Mass. 766, 769 (2009) ("[n]arcotics investigators may testify as experts to describe how drug transactions occur on the street"). "We suspect it would be a rare case in which a witness's statement that a particular substance looked like a

---

[3]Much testimony was directed at estimating the street selling prices of the packages. While some of the testimony relied directly on the $320 found after the codefendants had been taken from the cruiser as the likely price paid for the four packages seized from Wright, the selling price of cocaine is irrelevant to prove that the substances were cocaine. The defendant cites G. L. c. 94C, § 32G, penalizing the distribution of counterfeit substances, as indicating that counterfeit substances are being distributed. It appears likely that only laboratory analysis would determine whether a substance is counterfeit.

controlled substance would alone be sufficient to support a conviction," *Commonwealth* v. *Dawson, supra,* particularly where, as here, there was insufficient evidence to conclude beyond a reasonable doubt that the substances were cocaine.[4] The certificates remained the only direct evidence of the composition and weight of the seized packages.

The judge instructed the jury that "the Commonwealth must prove to you that the substance that the defendant allegedly possessed was, in fact, cocaine. . . . In considering this element, you may consider all the relevant evidence you had in the case about what that substance was." She pointed out that "[i]n particular, you have a certificate of analysis . . . and you should consider that together with all other evidence." She concluded, "So from that certificate of analysis you're permitted but you're not required to conclude that the substance was cocaine. It is entirely up to you to decide." Together with the prosecutor's statement in closing argument that the four bags seized from Wright were "cocaine, analyzed as such," the certificates had a high evidentiary profile in the case.[5] Contrast *Commonwealth* v. *Madera, ante* 154, 158 (2010).

The Commonwealth asserts that "the nature and weight of

---

[4]We reject the Commonwealth's assertion that the jurors could inspect the drugs during deliberations and could conclude from their own observations that the substances were cocaine. Although in *Commonwealth* v. *Connolly,* 454 Mass. 808, 831-832 (2009), the Supreme Judicial Court observed that the jury could evaluate the weight of a quantity of cocaine that was entered in evidence and taken in the jury room, there was no suggestion that the jury would have been able to assess the nature of the substance itself, nor would such a suggestion be warranted.

The defendant disputes police testimony that the substances appeared to be of the same size, and identically packaged, stating to the contrary that the forms of the substances varied from powder to small and large rocks, and varied in color.

[5]Each of the drug analysis certificates quoted from G. L. c. 111, § 13, at the bottom of the page, as follows:

> "This certificate shall be sworn to before a justice of the peace or notary public, and the jurat shall contain a statement that the subscriber is the analyst or an assistant analyst of the department. When properly executed, it shall be prima facie evidence of the composition, quality, and the net weight of the narcotic or other drug, poison, medicine, or chemical analyzed . . . , and the court shall take judicial notice of the signature of the analyst or assistant analyst, and of the fact that [he or she] is such."

the drugs were . . . not live issues at trial." Because the trial judge admitted the drug analysis certificates over objection without questioning the grounds for the objection or inviting argument, the defense hardly was in a position to argue that the substances were not cocaine. See Mass.R.Crim.P. 22, 378 Mass. 893 (1979). See also Smith, Criminal Practice & Procedure § 33.8 at 762 (3d ed. 2007). In light of the law then in effect, "[i]t is neither realistic nor fair in these circumstances to place much weight on the fact that the defendant . . . did not attack the contents of the certificate." *Commonwealth* v. *Hollister*, 75 Mass. App. Ct. 729, 732 (2009). See *Commonwealth* v. *Tyree*, 455 Mass. 676, 704 n.43 (2010).

We conclude that the certificates were of significant importance in the Commonwealth's case because they were the only evidence of the composition and weight of the substances, and the other evidence against the defendant was circumstantial and certainly not overwhelming. The improperly admitted certificates cannot be said to have played little or no role in the outcome of the case. Consequently, the error in their admission was not harmless beyond a reasonable doubt.

*Judgments reversed.*

*Verdicts set aside.*