**Troy BROWN, Petitioner**

v.

**Paul RUANE, Respondent.**

**Civil Action No. 08–10555–WGY.**

United States District Court,
D. Massachusetts.

Aug. 19, 2009.

Jessica Vincent Barnett, Office of the Attorney General, Boston, MA, for Petitioner.

Dennis A. Shedd, Lexington, MA, for Respondent.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Petitioner Troy Brown ("Brown"), convicted in 2003 of armed assault with intent to rob a person sixty years or older, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Brown Mem. in Support ("Brown Mem. In Sup.") [Doc. No. 9] at 1. He alleges that he was deprived of his federal constitutional right to confront the witnesses against him when a justice in the Superior Court restricted his cross-examination of certain police officers regarding their investigation of another suspect. *Id.* at 9. He contends that the Massachusetts Appeals Court improperly relied upon *Commonwealth v. Miles,* 420 Mass. 67, 648 N.E.2d 719 (1995), rather than the standard set forth by the U.S. Supreme Court in *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). *See* Brown Mem. in Sup. at 11–12.

The Commonwealth advances two grounds for denial. First, Brown's petition should be dismissed as unexhausted because he failed to argue in the state courts that the Massachusetts Appeals

Court applied an incorrect legal standard to the confrontation clause issue. Respondent Mem. in Opposition ("Resp. Mem. in Opp.") [Doc. No. 10] at 1. Alternatively, the Commonwealth argues that the petition ought be denied because the Massachusetts Appeals Court reasonably applied the controlling Supreme Court precedent. *Id.*

## I. Procedural Posture

Brown was indicted on September 25, 2002 for assault and battery on a person sixty years old or older and armed assault with intent to rob a person sixty years old or older. *See* Docket Sheet [Doc. No. 6, Ex. A] at 9. On November 23, 2003, a jury found Brown guilty of assault with intent to rob but acquitted him on the count of assault and battery. A justice in the Superior Court sentenced him to seven to ten years in MCI Cedar Junction. *Id.* at 6.

Brown subsequently appealed his conviction and filed a motion requesting a new trial, which was denied on June 6, 2005. *Id.* at 8. Brown appealed the denial. The Massachusetts Appeals Court consolidated this appeal with his direct appeal and affirmed Brown's conviction. *Commonwealth v. Brown,* No. 04–P1158, 67 Mass. App.Ct. 1116, 2006 WL 3392089 (Mass. App.Ct. Nov. 24, 2006). Brown moved for reconsideration, which was denied on December 19, 2006. *See* Order Denying Rehearing [Doc. No. 6, Ex. I]. The Massachusetts Supreme Judicial Court denied Brown's request for further appellate review on February 1, 2007. *See Commonwealth v. Brown,* 448 Mass. 1103, 861 N.E.2d 28 (2007).

Subsequently, Brown appealed his case to the United States Supreme Court, *see* [Doc. No. 6, Ex. L], which denied certiorari on October 1, 2007, 552 U.S. 834, 128 S.Ct. 64, 169 L.Ed.2d 52 (2007). *See* [Doc. No. 6, Ex. M]. Brown timely filed this petition for a writ of habeas corpus on April 2, 2008. Petition [Doc. No. 1].

## II. Facts

A petitioner seeking a writ of habeas corpus bears the burden of rebutting by clear and convincing evidence the presumption that the factual findings, including implicit factual findings, of both the state and trial appellate courts,[1] are correct. *See* 28 U.S.C. § 2254(e)(1). This Court thus rests its analysis on the factual record incorporated in the Massachusetts Appeals Court's unpublished opinion.

### A. The Incident

The victim was a sixty five year old man who was in poor health after suffering a stroke. *See Brown,* 2006 WL 3392089, at *1. On August 19, 2002, the victim went for a late night walk through his Fall River neighborhood, also known as "Corky Row". *Id.* At the time, he was taking an Alzheimer's medication to maintain his memory, in addition to a regimen of medication designed to combat anxiety, depression, diabetes, and hypertension. *Id.* Prior to departing his house around 10:00 P.M., the victim consumed three shots of scotch. *Id.*

After walking for approximately an hour, the victim was confronted by two men. *Id.* The victim triggered a hostile exchange when he told the men that Corky Row was "going downhill." *Id.* Following

---

1. Strictly speaking of course, appellate courts never "find" facts. That is solely a matter for juries and trial judges. *See Fisher v. Scafati,* 439 F.2d 307, 309 n. 2 (1st Cir.1971) ("The state appellate court has not made findings; it has merely held that those of its trial court were supportable."). In the world of habeas speak, however, an appellate court's characterization of the trial record is frequently (and inaccurately) spoken of as a factual finding.

this exchange, the first assailant (later identified to be Tyrone Smith) struck the victim on the side of the head causing him to fall into a fence. *Id.* As he began to steady himself, the second assailant (later identified as Brown) lifted a small bicycle over the victim's head and demanded that he turn over all of his money. *Id.* After telling the assailant that he carried no money, the victim walked a short distance before he was confronted by an unidentified third person. Soon thereafter the first assailant (Smith) reappeared, and again struck the victim on the top of his head, which rendered him unconscious. *Id.* Upon regaining consciousness, the victim saw the second assailant (Brown) rifling through his pockets. The three men then fled. *Id.*

Following the attack, the victim walked home and rested for some time before he walked by himself to a nearby hospital for treatment, where he later described the assailants to Police Officer David Gouveia. *Id.* at *2. After reviewing photographs contained in a "gang book", the victim failed to identify his attackers. *Id.* Weeks later, Officer Gouveia visited the victim's home to show him an array of seven photographs. *Id.* The victim immediately identified Brown as the individual who held the bicycle over his head (the second assailant) and Smith as the man who punched him (the first assailant). *Id.*

The police went to Brown's residence on September 11, 2002. When they arrived at his home, Brown's girlfriend answered the door after a delay. *Id.* The police soon found Brown attempting to hide underneath a bed. *Id.* After he was arrested, Brown denied involvement in the assault and claimed that he was too drunk to remember anything. *Id.* Smith was arrested as well and later pled guilty. *Id.* at *1 n. 2.

## B. The Trial

Brown's defense rested on a theory of misidentification. *Id.* at *2. To support this theory, defense counsel cross-examined the victim regarding his ability to recall the assault based on his various medical conditions, and how alcohol in combination with prescription medications may have decreased his mental faculties. *Id.* Defense counsel also attempted to establish alibis for Brown. For example, Brown's girlfriend testified that he attended a party with her that night, and a hostess of that party confirmed his presence. *Id.* Additionally, defense counsel emphasized that Brown's appearance did not fit the victim's initial description of the second assailant. *Id.* Most importantly here, defense counsel sought to elicit police testimony that would cast Cagney Bettencourt ("Bettencourt") as the second assailant. *Id.* In particular, defense counsel sought to introduce Smith's post-arrest statements which contended that he and Bettencourt were together at the time of the incident, and that they had both talked to the victim but did not assault him. Smith also reported that he saw a third person named "Triz" punch the victim. Brown's counsel, however, did not call on Smith to elicit this testimony. Rather, he sought this evidence through cross examination of one of the police officers. As noted by the Massachusetts Appeals Court, "[t]rial counsel chose not to call Smith as a witness because he was not sure that Smith would affirm his earlier statement to the police." *Id.*

The trial judge excluded all questions relating to the police interview of Smith. *Id.* at *3. Brown contends that this ruling directly and improperly affected his ability to introduce evidence that Bettencourt, and not Brown, was the second assailant, thus depriving him of his constitutional

right to confront a witness against him. Brown Mem. in Sup. at 11–14.

Brown also alleges that the government's closing argument was misleading and prejudicial by conflating the second and third suspects, even though Brown was suspected of being the second person:

> We have this other array that somehow [trial counsel] wants to criticize the police for going back and showing another photo array after Mr. Brown and Mr. Smith had been arrested. Well, there was another person there that night. Should the police stop looking for this third person?

Tr. Vol 3. at 3–37. Brown argues that the jury was influenced by this statement and led to believe that Bettencourt was suspected of being the third person involved in the attack rather than the second assailant, in place of Brown. Brown Mem. In Sup. at 7.

Despite the limitations on cross examination, defense counsel nevertheless was able to introduce the Bettencourt theory into trial in several ways. For example, "Officer Gouveia testified on cross-examination that Bettencourt's name had surfaced during the investigation and that Officer Gouveia had attempted to locate him." *Brown*, 2006 WL 3392089, at *3. Moreover, defense counsel successfully "introduced Bettencourt's photograph in evidence and then argued to the jury that the description provided by [the victim] more closely resembled Bettencourt than the defendant." *Id.* More generally, the defense counsel solicited testimony from Officer Gouveia suggesting that Brown was taller than the victim's description of the man who held the bicycle over his head. *Id.* at *3 & n. 6.

In his closing remarks to the jury, defense counsel forcefully questioned the victim's ability to identify the attackers and argued that there were discrepancies between Brown's appearance and the victim's initial description of the second assailant to the police. *Id.* at *2.

## III. ANALYSIS

### A. Standard of Review

In order for this Court to grant Brown a writ of habeas corpus, Brown must satisfy the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254. AEDPA provides that a person in state custody cannot receive a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Additionally, AEDPA declares that a habeas applicant has not exhausted his claim "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

Proving exhaustion is a condition precedent to obtaining relief. After proving that a claim was exhausted, Brown must demonstrate that the underlying adjudication resulted in a decision that was contrary to or an unreasonable application of clearly established Federal law, or that the underlying decision stemmed from an unreasonable determination of facts. 28 U.S.C. § 2254(d); *see Evans v. Verdini*, 466 F.3d 141, 145 (1st Cir.2006). ADEPA explicitly provides that a state court's "determination of a factual issue ... shall be presumed to be correct" and that the moving party can only rebut this presumption "by clear and convincing evidence" 28 U.S.C. § 2254(e)(1).[2] As for his legal claims, Brown must carry the burden of

---

**2.** As is the case in our patent laws, *see* 35 U.S.C. § 282, AEDPA actually shifts the bur-
den to petitioner. It does not involve a "presumption" at all. *Cf.* Fed.R.Evid. 301.

demonstrating that the state court was "objectively unreasonable" in its application of clearly established Federal law. *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An incorrect decision is not necessarily an objectively unreasonable decision. *Hurtado v. Tucker*, 245 F.3d 7, 15–16 (1st Cir.2001). The subsequent analysis considers first whether Brown's claim was exhausted under 28 U.S.C. § 2254(c) and then whether Brown has proved an unreasonable application of law or incorrect determination of fact.

### B. Exhaustion

Brown alleges that the Massachusetts Appeals Court applied an incorrect legal standard when it reviewed his claim pursuant to *Commonwealth v. Miles*, 420 Mass. 67, 648 N.E.2d 719 (1995). *See* Brown Mem. in Supp. at 11. According to Brown, *Miles* is an incorrect application of the Supreme Court's legal standard as set forth in *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). *Id.*

The Commonwealth argues that Brown's reliance on *Van Arsdall* represents a shift from his previous argument and thus is barred under the doctrines of exhaustion and judicial estoppel. Resp. Mem in Opp. at 8–10.

### 1. Judicial Estoppel

■ The Commonwealth, relying on *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), urges this Court to use its discretion to invoke the doctrine of judicial estoppel because Brown seemingly has reversed his position on the constitutionality of the *Miles* standard. Resp. Mem. in Opp. at 9–10. The Commonwealth is particularly insistent in pointing out that Brown successfully argued that the *Miles*

standard ought apply to his confrontation clause complaint before the Massachusetts Appeals Court, *see* Resp. Mem in Opp. at 10, yet now argues that such standard is unconstitutional.

Brown responds, relying as well on *New Hampshire v. Maine*, that his current petition does not warrant the application of judicial estoppel because it does not represent an opportunistic divergence from a prior argument nor does it threaten the integrity of the judicial process. Brown Reply to Resp. Mem. in Opp. [Doc. No. 13] at 7–8.

■ The doctrine of judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)). Courts should consider several factors before invoking judicial estoppel:

> "First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations' and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*New Hampshire,* 532 U.S. at 750–51, 121 S.Ct. 1808 (internal citations omitted).

The answer to the Commonwealth's judicial estoppel argument is that both parties relied on *Miles* at the Appeals Court, the Appeals Court applied *Miles,*[3] and Brown lost. *See Brown,* 2006 WL 3392089, at *3; Brown's Appeals Court Brief [Doc. No. 6, Ex. D] at 12–13; Commonwealth's Appeals Court Brief [Doc. No. 6, Ex. E] at 18. Brown first cited *Van Arsdall* as the appropriate standard when he sought further appellate review from the Massachusetts Supreme Judicial Court. Brown's Application to SJC [Doc. No. 6, Ex. J] at 15–16. Brown is thus not attempting to frustrate the judicial process or trying to play "fast and loose with the courts." *New Hampshire,* 532 U.S. at 751, 121 S.Ct. 1808. The essential substantive claim underlying Brown's petition remains consistent and the Commonwealth will not suffer any unfair detriment.

The application of judicial estoppel is not appropriate in this case.

### 2. Exhaustion

 The Commonwealth argues that Brown never argued in state court that the *Miles* standard contravenes the Supreme Court's opinion in *Van Arsdall* and thus his petition to this Court embodies a significantly different legal theory than the arguments he made to the Massachusetts state courts, in violation of the exhaustion requirement. Resp. Mem. in Opp. at 8. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted [by a Federal Court] unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.

§ 2254(b)(1)(A); *see also Adelson v. DiPaola,* 131 F.3d 259, 261 (1st Cir.1997)("A federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application."). A habeas petitioner whose underlying case was adjudicated in state court fulfills his exhaustion burden when he has "1) cited a specific constitutional provision, 2) relied on federal constitutional precedent, . . . 3) claimed a determinate right that is constitutionally protected" or 4) presented the federal claim in a way that alerted the state court to its federal nature. *Nadworny v. Fair,* 872 F.2d 1093, 1097–98 (1st Cir.1989). The exhaustion requirement ensures that state courts have an opportunity to correct their own federal constitutional errors, and promotes comity by "minimiz[ing] friction between our federal and state systems of justice." *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981); *see also Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

Reviewing the appellate briefs that Brown previously submitted to the Massachusetts Appeals Court and Supreme Judicial Court will demonstrate whether Brown "fairly presented" his claim to the state courts. *See Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). If Brown's previously-submitted briefs gave the state courts a fair opportunity to consider the "substance" of the federal claims and correct the alleged constitutional defects, his state remedies should be considered exhausted. *See Evans v. Thompson,* 465 F.Supp.2d 62, 75 (D.Mass.2006); *see also Gagne v. Fair,* 835 F.2d 6, 7 (1st Cir.1987).

---

**3.** This is hardly surprising since, as an inferior Court, it is bound by applicable Massachu-setts Supreme Judicial Court precedent.

Brown did not cite *Van Arsdall* in his appeal to the Massachusetts Appeals Court and only cited *Van Arsdall* in conjunction with *Miles* in his appeal to the Supreme Judicial Court. *See* Brown's Application to SJC at 15. While Brown cited *Van Arsdall* specifically for the proposition that the claimed error was not harmless beyond a reasonable doubt, he did not further attempt to differentiate the Supreme Court's reasoning in *Van Arsdall* from the Massachusetts standard enunciated in *Miles*. *Id.* at 16. Brown, however, consistently argued that his confrontation clause rights were violated. These consistent references are enough to satisfy the exhaustion requirement and surely made the Supreme Judicial Court aware of the federal nature of Brown's claims. *Evans*, 465 F.Supp.2d at 75; *see also Gagne* 835 F.2d at 7.

In addition to citing *Van Arsdall* in his application to the Supreme Judicial Court, it is also critical to note that Brown did not present any arguments rooted in the cognate language of the Massachusetts constitution. *See Evans*, 465 F.Supp.2d at 75. Even when relying upon state court precedent, Brown consistently advanced his federal claim related to the alleged violation of his confrontation clause rights. Placing limitations on the ability of a state criminal defendant to cross-examine adverse prosecution witnesses undoubtedly implicates confrontation rights protected by the Sixth and Fourteenth Amendments. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

The balancing approach embodied in *Miles* requires a reviewing state court to "weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination." 420 Mass. at 72, 648 N.E.2d 719 (citing *Commonwealth v. Kirouac*, 405 Mass. 557, 561, 542 N.E.2d 270 (1989)). Similarly, the *Van Arsdall* inquiry focuses on the particular witness and not the outcome of the entire trial. 475 U.S. at 680, 106 S.Ct. 1431. Although there are differences between the two approaches, as will be addressed below, their substantial similarity mandates the conclusion that Brown has exhausted his state remedies by giving the state's highest court notice of his claim's federal nature. *See Nadworny*, 872 F.2d at 1097–98.

## C. Unreasonable application of clearly established Federal law

█ In this case, the standard in *Van Arsdall* constitutes the clearly established federal law. There, the Supreme Court held that a defendant's right to cross examination, secured by the Confrontation Clause, had been violated because the "trial court prohibited *all* inquiry into the possibility that [a certain witness] would be biased as a result of the State's dismissal of [a] pending … charge." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431. While there was no dispute that a trial judge may impose "reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness," 475 U.S. at 679, 106 S.Ct. 1431, the Supreme Court disagreed with the State's argument that a limitation on cross examination violated the Confrontation Clause only if it "created a reasonable possibility that the jury returned an inaccurate guilty verdict." *Id.* at 679–80, 106 S.Ct. 1431. It explained that "the focus of the Confrontation Clause is on individual witnesses. Accordingly, the focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial." *Id.* at 680, 106 S.Ct. 1431. The Court explained that the defendant was required to show "that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a pro-

totypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " *Id.* at 680, 106 S.Ct. 1431 (quoting *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). There, the Supreme Court concluded that the defendant had met his burden. *Id.*

The Court held, however, that the "constitutionally improper denial of defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* [*v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)] harmless error analysis." *Id.* at 684, 106 S.Ct. 1431. "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Id.* The Supreme Court also held that determining whether an error was harmless depended on several factors which included "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, ... the extent of the cross examination otherwise permitted and ... the overall strength of the prosecution's case." *Id.*

In *Miles,* the Supreme Judicial Court faced a fact-pattern similar to the case presently before this Court. 420 Mass. at 71, 648 N.E.2d 719. There, when a defendant's counsel tried to cross-examine a police officer regarding the investigation of other suspects in order to support defendant's misidentification theory of defense, the judge limited the cross examination. *Id.* The Supreme Judicial Court concluded that the police officer's testimony · was "critical to the Commonwealth's case, in particular because the victim did not see her assailant's face at the time of the

rape," and ruled that the trial judge had erred in limiting cross examination because "the facts sought to be raised on cross-examination ... 'went to the essence of the defense.' " *Id.* at 72, 648 N.E.2d 719 (quoting *Commonwealth v. Funches,* 379 Mass. 283, 293, 397 N.E.2d 1097 (1979)). The Supreme Judicial Court, however, applying *Van Arsdall,* held that the error was harmless: "[t]he admission of testimony obtained in violation of a defendant's confrontation rights will not amount to reversible error 'if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' " *Miles,* 420 Mass. at 73, 648 N.E.2d 719 (quoting *Van Arsdall,* 475 U.S. at 681, 106 S.Ct. 1431).

This Court, of course, need not decide whether the *Miles* standard is contrary to *Van Arsdall* but rather whether the Appeals Court decision in *Commonwealth v. Brown* is.

The Court cannot grant Brown a writ of habeas corpus unless the "state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. 1495; *see also* 28 U.S.C. § 2254(d)(1). In the First Circuit, this analysis focuses on the state court's result rather than the internal logic of the decision:

> The ultimate question on habeas, however, is not how well reasoned the state court decision is, but whether the outcome is reasonable. Of course, the better reasoned the state decision, the less likely it is that it could represent an unreasonable application of clearly established Supreme Court law.

*Hurtado v. Tucker,* 245 F.3d 7, 20 (1st Cir.2001) (internal citations omitted).

Brown contends that the Appeals Court ignored the teaching in *Van Arsdall* that a defendant's rights are violated when jurors

"might have received a significantly different impression of [the witness's] credibility had the respondent's counsel been permitted to pursue his proposed line of cross-examination." 475 U.S. at 680, 106 S.Ct. 1431. Brown Mem. In Sup. at 11–12. The Commonwealth responds that this aspect of *Van Arsdall* is limited to witness bias cases and is thus not applicable here. Resp. Mem. In Opp. at 12–13. Brown disagrees, but contends that, regardless, the evidence he tried to elicit from Officer Gouveia was intended to impeach the testimony of the victim and officers, and therefore was similar to the improperly restricted cross examination in Van *Arsdall.* Brown Reply at 10–11. Whether *Van Arsdall* is limited to witness bias cases is immaterial here because the Superior Court's limitation of Brown's cross examination of Officer Gouveia regarding Smith's testimony is neither contrary to nor unreasonable under *Van Arsdall.*

■ The Confrontation Clause is not limitless. It "guarantees an *opportunity* for effective cross-examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985)). The Supreme Court's concern in *Van Arsdall* is simply not present here. The Commonwealth justifiably observes that Brown was not foreclosed from advancing his theory of defense. Resp. Mem. in Opp. at 15. Brown cross examined the victim and questioned his reliability. The jury was allowed to entertain the Bettencourt theory after being exposed to several pieces of evidence that suggested Bettencourt's involvement. 2006 WL 3392089, at *3. Additionally, Brown could have called Smith as a witness in order to get him to affirm his

earlier statement to the police, but chose not to. *Id.* at *2.

Even had there been error (there was not), it was harmless. Brown was allowed to cross examine the victim and to introduce his theory that Bettencourt, not Brown, was the second assailant. The Appeals Court thoroughly examined the facts and discussed the legal strategies employed at trial before affirming the trial judge's decision to limit cross-examination. *Brown*, 2006 WL 3392089, *2–3. It observed that the police officers' testimony was only "marginally relevant" to the prosecution's case, which was primarily based upon the victim's identification of Brown. *Id.* at *3. Additionally, the Appeals Court discussed how Brown did not fit the physical description of the second assailant according to the victim's initial description and how Bettencourt was viewed as a suspect. *Id.*

Based on a review of the applicable case law, this Court rules that there was no Confrontation Clause violation. Therefore, Brown's petition for a writ of habeas corpus must be denied unless the Appeals Court unreasonably characterized the evidentiary record in reaching its decision.

## D. Unreasonable determination of facts

Brown argues that the Appeals Court unreasonably characterized the evidentiary record when it stated that on the morning after the incident, the victim described to the police only two of the three men who attacked him. Brown Mem. in Supp. at 15. There was some evidence at trial that the victim also gave a description of the third assailant, Trial Tr. Vol. 1, 1–132, a description that did not fit Bettencourt or Brown. The Commonwealth concedes that the Appeals Court was "imprecise in its summary." Resp. Mem. In Opp. at 17. This characterization is justified. "[T]here

is some room for mistakes under § 2254(d)(1)." *Hurtado,* 245 F.3d at 18.

## IV. CONCLUSION

Because "the Constitution entitles a criminal defendant to a fair trial, not a perfect one," *Van Arsdall,* 475 U.S. at 681, 106 S.Ct. 1431, Brown's Petition for Habeas Corpus [Doc. No. 1] must be, and hereby is, DENIED.

SO ORDERED.